UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERNEST LEROY JONES | ) | |
| | ) | |
| v. | ) | No. 3:11-00963 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Government has filed a Response (Docket No. 10), along with an Affidavit of Hershell Koger (Docket No. 10-1).

For the reasons set forth below, the Court concludes that Petitioner's Motion To Vacate (Docket No. 1) is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with armed bank robbery, in violation of 18 U.S.C. § 2113(a). (Felony Information (Docket No. 13 in Case No. 3:06-00013)). Prior to trial, counsel for the Petitioner, William Buford Bates, filed motions to suppress evidence and the Petitioner's statement to police (Docket Nos. 24, 25 in Case No. 3:06-00013), which the trial court[1] denied after holding an evidentiary hearing. (Docket Nos. 29, 30, 31, 32 in Case No. 3:06-00013).

At the conclusion of a three-day trial, a jury returned a guilty verdict against the

---

[1] Former District Court Judge Robert Echols presided over the underlying criminal case.

Petitioner. (Docket Nos. 35-39 in Case No. 3:06-00013). Prior to sentencing, the Petitioner requested new counsel (Docket Nos. 42, 43 in Case No. 3:06-00013), and the trial court granted the request. (Docket Nos. 48, 49 in Case No. 3:06-00013). Petitioner's substitute counsel, Hershell Koger, moved for a new trial or reconsideration of the denial of the suppression motions, which the trial court denied. (Docket Nos. 69, 71 in Case No. 3:06-00013). At the subsequent sentencing hearing, the trial court sentenced the Petitioner to a term of 100 months of imprisonment. (Docket Nos. 80, 81, 82 in Case No. 3:06-00013).

On appeal of Petitioner's conviction, the Sixth Circuit affirmed. (Docket No. 108 in Case No. 3:06-00013). The Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 4, 2010. (Docket Nos. 112, 113 in Case No. 3:06-00013).

In its decision, the Sixth Circuit presented the relevant facts as follows:

> On the morning of January 9, 2006, a man wearing a ski mask and brandishing what appeared to be a long gun wrapped in a white plastic bag robbed a U.S. Bank branch in Nashville, Tennessee. A teller surrendered $3245, including bait money whose serial numbers had been logged by the bank for identification. After the robber fled, bank employees triggered an alarm.
>
> The police arrived and interviewed several witnesses. The tellers described the robber as a short, small-framed African–American male, between 45 and 55 years old, and wearing black clothes. The bank's assistant manager reported seeing a man matching that description pacing the parking lot before the bank opened. Another witness said a maroon Pontiac Bonneville had been parked near the bank prior to the robbery, but that the car was gone by the time the police arrived. The officers promptly located a matching vehicle in the parking lot of a nearby motel. The car was licensed to Ernest Jones, who had checked into the motel that morning. The officers began surveillance. They shortly apprehended Jones—who matched the robber's description except for his clothes—when he left his motel room and approached the vehicle. Through the rear windows of the Bonneville, officers saw what appeared to be a long gun covered in a white sheet or bag.
>
> Officer Kevin Carroll arrived at the motel shortly thereafter. According to

2

Carroll, he advised Jones of his Miranda rights, which Jones orally acknowledged and waived. Carroll and Detective Charlie Harris then interrogated Jones. According to the officers, Jones at first denied robbing the bank but then claimed to have visited a friend nearby. Jones later admitted the robbery and said he taped sticks and a crushed plastic bottle together to resemble a long gun. He also said that, after he left the bank, he stopped to buy crack cocaine and then returned to the motel. He said the remainder of the money was under a pillow in his motel room. Jones gave written consent for the police to search his room and car. When the police searched his car, they found the fake gun and a ski mask. They also found $2415 and some crack cocaine in Jones's room. The money included bait bills from the bank.

Jones disputes this account in several respects. He alleges that Carroll never gave him his Miranda warnings, that he did not admit to the robbery, and that he consented to a search of only the motel room and not the car. He also alleges he was impaired from smoking crack cocaine and thus incapable of consenting to a search or waiving his rights. Based on these allegations, Jones filed motions to suppress his statements and the fake gun. The district court held an evidentiary hearing at which Jones testified. At its conclusion, the court found Jones to be incredible and denied his motions.

Jones was thereafter tried before a jury. After four hours of deliberations, the jury notified the judge that it was deadlocked, and requested instructions. The judge told the jury to continue deliberating. Ninety minutes later, the jury again contacted the judge. This time, the judge gave a supplemental instruction to the jury, over Jones's objection. Less than an hour later, the jury returned a guilty verdict. The court thereafter sentenced Jones to 100 months' imprisonment.

(Docket No. 108, at 1-3 in Case No. 3:06-00013).

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of trial counsel.

B. The Section 2255 Remedy/Evidentiary Hearing Not Required.

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to

have their sentence vacated, set aside or corrected.[2] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255.

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court has reviewed the files, records, transcripts and correspondence filed in

---

[2] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

4

Petitioner's underlying criminal case, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective assistance of counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

 "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065. Cullen, 131 S.Ct. at 1403.

In proving prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland,104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; Cullen, 131 S.Ct. at 1403.

Petitioner argues that he received the ineffective assistance of trial counsel because: (1) counsel failed to investigate claims presented by Petitioner; (2) counsel failed to challenge any

5

evidence presented by the Government; (3) counsel failed to present a credible defense; (4) counsel failed to move for a new trial; (5) counsel failed to obtain statements of the arresting officers to show they lied at the suppression hearing and at trial; and (6) counsel failed to use evidence indicating that the Petitioner did not give consent to search his vehicle.

Several of Petitioner's allegations are stated in conclusory fashion, and lack specifics. Conclusory, unsupported allegations are legally insufficient to support a motion to vacate. See, e.g., McConnell v. United States, 162 F.3d 1162, 1998 WL 552844 (6th Cir. Aug., 10, 1998). Thus, those claims are denied. Petitioner's more specific claims are addressed below.

Petitioner first argues that his trial counsel, Mr. Bates, was ineffective for failing to point out that the police could not produce the articles of clothing that were supposed to have been worn by the bank robber. Petitioner notes that the witnesses testified the robber wore black clothing, and no black clothing was found in Petitioner's motel room. Petitioner states that he was arrested wearing a red sweatshirt and a pair of jeans with holes in the knees.

In cross examining a bank employee at trial, trial counsel elicited testimony that the bank robber was wearing a dark jacket, dark pants, and a dark stocking hat. (Trial Transcript, at 45-46 (Docket No. 66 in Case No. 3:06-00013)). Another bank employee testified to a similar description. (Id., at 50-51). In cross examining Detective Kevin Carroll, trial counsel elicited testimony that no clothes matching that description were found when the Petitioner was arrested:

Q. Does that have a list of the inventory of items that you took from the room?

A. Yes, sir. It does.

Q. Do you see anything there about a black shirt or a black jacket?

A. No, sir, I don't.

6

> Q. Do you see anything there about a black pair of pants?
>
> A. No, sir, I don't.
>
> Q. Do you see anything there about any gloves?
>
> A. No, sir.
>
> Q. Do you see anything there about a mask with holes in it?
>
> A. No, sir.
>
> Q. Did you find any of the items I've just described to you in the car?
>
> A. We didn't seize any items from either the car or the room that are as you've just described.
>
> Q. So the answer is no, you didn't find it; right?
>
> A. No, sir.

(Trial Transcript, at 108-09 (Docket No. 66 in Case No. 3:06-00013)). Through examination of the Petitioner, trial counsel also established that, when he was arrested on the same day as the bank robbery, he was wearing "a pair of blue jeans with holes in it and a red sweatshirt." (Trial Transcript, at 169-70 (Docket No. 67 in Case No. 3:06-00013)). Petitioner claimed he had worn the same clothes all day, and denied having black pants, a black jacket or gloves. (Id.)

Thus, the record indicates that the evidence Petitioner alleges that trial counsel should have presented to the jury was in fact presented to the jury. The jury apparently was not persuaded by that evidence, but Petitioner has not shown that trial counsel was deficient in bringing it to their attention.

Next, Petitioner argues that trial counsel should have secured a recording of the robbery from the bank's surveillance system. Petitioner contends that, if cameras had been working at

7

the time of the robbery, they could have been used to identify the real bank robber. In order to prevail on his claim that counsel was deficient, however, Petitioner is required to show that there is a reasonable probability that a recording from the camera would have affected the outcome of the trial. Without the ability to review such a recording, if it exists, the Court cannot find that the recording would have benefitted the Petitioner. Thus, Petitioner has failed to show prejudice regarding this claim.

Petitioner contends that trial counsel failed to investigate his alibi, and identify witnesses to support his story. Petitioner has not, however, specified any investigative tasks or potential witnesses that trial counsel should have pursued that would have supported his alibi. The Court notes that, on the morning of trial, the Petitioner requested a continuance to secure the appearance of witnesses, but the only potential witness he identified to the trial court was an expert on the effects of cocaine. (Docket No. 65, at 11, in Case No. 3:06-00013). When the trial court asked the Petitioner what other witnesses he had in mind, the Petitioner answered: "That was the only one." (Id., at 17). At that time, trial counsel advised the trial court that he knew of no witnesses that the Petitioner had mentioned that might be of any benefit to him. (Id., at 11). Based on this record, and Petitioner's failure to specify potential witnesses in his papers here, the Court concludes that Petitioner has failed to show trial counsel was deficient.

Petitioner argues that trial counsel failed to maintain an appropriate level of communication with him. Petitioner claims that when questioned about the lack of communication and investigation, trial counsel told him: "You are the wheelbarrow and I push. You just listen to me." (Docket No. 1, at p. 24 of 29). Petitioner states that his only communication with trial counsel was on four occasions: initial contact (April 2006); before the

8

suppression hearing (July 2006); day of suppression hearing (July 7, 2006), and day of trial (July 11, 2006). (Id.)

Petitioner made a similar complaint to the trial court on the morning of trial. When the trial court asked for the response of trial counsel, counsel stated: "We've spent six hours together on about five different occasions. Some of that had to do, of course, with the suppression hearing. The early meetings had to do with his version of what happened on the day of the event that we're here about." (Docket No. 65, at 11, in Case No. 3:06-00013). Trial counsel added that he had received several letters from the Petitioner "all of which seemed to correspond with what he has told me in our meetings as to his position of what happened." (Id.) Assuming Petitioner's version of the facts to be true, he does not specify how additional communications with counsel would have likely produced a different outcome. Thus, Petitioner has failed to show prejudice as to this claim.

Petitioner claims that trial counsel failed to pursue a discrepancy in the trial testimony of Detective Carroll and the suppression hearing testimony of Detective Charlie Harris. Petitioner points out that, at the suppression hearing, Detective Harris testified that the petitioner was seated between him and Detective Carroll in a police car when the Petitioner waived his Miranda rights and gave a statement. At the trial, however, Detective Carroll testified that he did not sit in the car with the Petitioner and Detective Harris because there was not enough room for three individuals to sit in the back seat at the same time. Detective Carroll testified that both he and Detective Harris were in the back seat with the Petitioner at separate times.

After the trial, Petitioner's substitute counsel, Mr. Koger, filed a Motion For New Trial And/Or Motion For Court To Reconsider Ruling On Defendant's Motions To Suppress (Docket

9

No. 69 in Case No. 3:06-00013), based on the conflicts in the testimony of the detectives. In ruling on that Motion, the trial court considered and rejected the same argument the Petitioner raises here:

> While there is in fact a discrepancy in the statements as between Detective Harris and Detective Carroll, this is not a ground for reconsidering the Motions to Suppress. This is because even if Detective Carroll had testified at the suppression hearing, the result would have been the same; to wit, the Court would have found that Defendant confessed to robbing the U.S. Bank and consented to the search of his vehicle and motel room. . . . Clearly, Detective Carroll's testimony solidified Detective Harris' testimony on the critical issues of whether Defendant consented to a search of his vehicle and motel room, and whether Defendant confessed to the crime. The discrepancy as to where the confession occurred and where the consent was obtained (in the back seat or in the vicinity of the police car) is of little significance particularly since this Court found as a fact that Defendant's testimony at the suppression hearing that he did not confess and that the 'Consent to Search' form was signed 'after the fact' was not credible.

(Docket No. 71, at 2-3, in Case No. 3:06-00013). The Sixth Circuit also rejected Petitioner's challenge to the denial of his motions to suppress based on this conflict in testimony, and agreed with the trial court that the conflict was "of little significance" given that Detective Carroll corroborated Detective Harris's testimony "on the critical issues." (Docket No. 108, at 4, in Case No. 3:06-00013).

Given the determinations of the trial court and the appeals court on this issue, the Court concludes that even if trial counsel was deficient in failing to raise the discrepancy in the testimony of the detectives, such a failure was not prejudicial as the trial court found that it would not have influenced his decision to reject the motions to suppress. In addition, the Court is not persuaded that pointing out the discrepancy to the jury at trial would have likely produced a different verdict.

Finally, Petitioner argues that he possesses a document "in Criminal Complaint Case

10

Number: 06-3007-MB" in which Detective Harris stated that the Petitioner consented to a search of his motel room, "and nothing was ever mentioned about the search of the vehicle." (Docket No. 1, at 28). Petitioner has not filed the document to which he refers, nor does he describe the contents of the document. Consequently, Petitioner has failed to show that counsel was deficient for failing to use the document to support the motions to suppress, or that failure to use the document would have likely produced a different outcome.

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE